Mark B. Barnes
MARK BARNES LAW PC
5717 Fall Creek Road
Indianapolis, Indiana 46220
Phone: 317/757-5570
Fax: Not applicable
Email: barnes@markbarneslaw.com

Jon C. Abernathy
Wilson S. Stober
Karl G. Popowics
GOODIN ABERNATHY, LLP
8900 Keystone Crossing, Suite 1100
Indianapolis, IN 46240
Phone: 317/843-2606
Fax: 317/574-3095
Email JAbernathy@goodinabernathy.com
Email: BStober@goodinabernathy.com
Email: KPopowics@goodinabernathy.com

Attorneys for Plaintiffs

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2012 OCT 30  PM 2: 30

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

**1: 12 -cv- 1 5 9 3 JMS -DKL**

# UNITED STATES DISTRICT COURT

for the

## SOUTHERN DISTRICT OF INDIANA – INDIANAPOLIS

| | |
|---|---|
| J. DOE, | ) Civil Action No.: |
| Plaintiff, | ) |
| | ) COMPLAINT FOR DECLARATORY AND |
| vs. | ) INJUNCTIVE RELIEF; OTHER |
| | ) EQUITABLE RELIEF; AND BREACH OF |
| | ) CONTRACT |
| TRUSTEES OF INDIANA UNIVERSITY and | ) |
| DANIEL RIVES, in his official capacity as | ) |
| Associate Vice President of Human Resources | ) |
| of Indiana University, | ) |
| Defendant | ) |

Plaintiff, J. Doe, herein set forth the allegations of Plaintiff's Complaint against Defendants,

Trustees of Indiana University, a body corporate existing pursuant to the laws of the State of

Indiana ("IU") and, in his official capacity only, Daniel Rives, the Associate Vice President of

Human Resources of IU.

## PRELIMINARY ALLEGATIONS

### *BACKGROUND*

1.     Plaintiff J. Doe is a bright 20-year-old Indiana citizen brimming with potential.  In June

2010, however, just after graduating from a college preparatory high school with honors, Plaintiff

became disabled by sudden worsening of certain co-occurring mental health illnesses.

2.     According to the U.S. Department of Health and Human Services ("HHS"), as many as

an estimated ten percent (10%) of the patients who suffer from a certain mental illness that

afflicted and continues to afflict Plaintiff die from physical health problems that result from the

behaviors caused by the mental illness (not including additional deaths resulting from suicidal

behavior).

3.     Although Plaintiff has twice attempted to commence Plaintiff's college education as a

freshman dormitory resident at Plaintiff's chosen university, Plaintiff has suffered relapses of

Plaintiff's mental illnesses in the winter or spring of each of the years 2011 and 2012 that have

forced Plaintiff to withdraw from that university after having completed only one semester.

4.     In connection with Plaintiff's health battles, Plaintiff has also battled the employer

(defendant IU) of Plaintiff's parent, and IU's third party group health insurance plan administrator, for insurance coverage of necessary treatments. Unlike the comprehensive benefit coverage that such plans provide for illnesses that are not diagnosable as mental illness, IU's plans provide, and have in the past at all relevant prior times provided (like many other such plans prior to enactment in 2008 of sweeping amendment to federal mental health insurance parity laws), insurance benefits for services to treat mental illnesses on bases that are (and that were not in prior periods) comparable to the bases on which benefits were provided for services to treat other illnesses or surgeries.

5.    In response to this discrimination and to afford mentally ill persons parity in mental health insurance treatment to those provided by a group health plan or group health insurer for treatments for other illnesses, Congress in 2008 passed, and President George W. Bush signed, a mental health insurance parity law ("MHPAEA").

6.    Under Title XXVII of the Public Health Service Act, as amended by MHPAEA (42 U.S.C. 300gg, *et seq.*) ("PHSA"), Defendant IU (through its third party administrator, and its officers, including Defendant Rives) is required by PHSA Section 2726 (42 U.S.C. 300gg-26(a)(3)(A)(ii)) (and has been required by such PHSA Section 2726 at all relevant times) to design and implement IU's employee group health insurance plans for the benefit of its enrolled employees and their beneficiaries (such as Plaintiff) such that (a) the treatment limitations applicable to mental health benefits under such plans are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the IU plans, and (b) there are no separate treatment limitations that are applicable only with respect to mental health benefits.

7.    HHS has enforcement authority over all health insurance plans offered to employees of non-federal governmental employers like IU under Title XXVII of the PHSA, including the amendments made thereto by MHPAEA and by PPACA.

8.    MHPAEA's basic parity mandates for non-discriminatory limitations on treatment, as described by paragraph 6, were self-implementing effective January 1, 2010.  As subsequently explicitly recognized by HHS, these treatment limitation parity mandates became privately actionable by injured health plan participants like Plaintiff for plan years commencing January 1, 2010, without regard to any administrative or regulatory agency rulemaking or other action (or inaction) by HHS.

9.    In 2010, to further protect patients (including the mentally ill) and assure affordable health care, Congress passed, and President Barack Obama signed, landmark heath care legislation ("PPACA").  PPACA expanded the protection of MHPAEA to certain plans not previously covered by MHPAEA.

10.    In addition, under Section 1554 of PPACA (headed "Access to Therapies"), HHS was expressly prohibited from promulgating any regulation that, among other matters, would create any unreasonable barriers to the ability of individuals to obtain appropriate medical care; that would impede timely access to health care services; or that would limit the availability of health care treatment for the full duration of a patient's medical needs (such Section 1554, the "Access to Therapies PPACA Provision").

11.    Despite MHPAEA's clear legislative intent (as amplified by the expansion of the coverage for mental health parity requirements by PPACA, including the Access to Therapies PPACA Provision) that insured persons like Plaintiff be treated fairly and have access to

therapies, Defendant IU's third party health plan administrator, Anthem Blue Cross Blue Shield, has denied benefits for over $100,000 of Plaintiff's expenses incurred over the 29-month period preceding the filing of this Complaint in the course of Plaintiff's receipt of services at various types of inpatient facilities in five different states that were qualified to treat Plaintiff's illnesses (mental health hospitals and other specialized state-licensed inpatient facilities).

12.     Claims with an aggregate dollar amount of least $50,000 were denied by Defendant IU's agent, Anthem, not based on any medical judgment (or even inquiry) as to the necessity or appropriateness of the treatment that was provided (or to be provided) to Plaintiff in exchange for the services for which benefits were denied.  Rather, as to such denials, Defendant IU's agent, Anthem, categorically refused to pay any claims that might be submitted by certain facilities (without any inquiry or review of the circumstances of the care provided by such facilities) based on an exclusion in the IU plans (in force at the date of filing this Complaint and for all relevant time periods) that purports to bar coverage for benefits for "[c]are provided or billed by residential treatment centers or facilities..."

13.     Inpatient facilities that provide specialized and integrated 24-hour programs for homogeneous patient groups (for instance, behavioral health disorders like substance abuse or alcoholism or mental illnesses like depression, eating disorders and personality disorders) are an integral part of the U.S. health care delivery system for the treatment of persons with mental illness or behavioral health conditions. Defendant IU, acting at the direction of Defendant Rives, and as the intended and foreseeable result of its adoption and its enforcement through Anthem Blue Cross Blue Shield of the exclusion described in paragraph 12, however, has categorically excluded mental health benefits for services provided by or billed by many such inpatient facilities, and threatens to continue to do so.

Page 5

14.   Plaintiff's uninsured costs of treatment at inpatient facilities that Defendant IU's agent had deemed classified as "residential treatment centers or facilities" over the 29-month period prior to filing of this Complaint total more than $50,000 (which approximates the annual average pre-tax W-2 income of all employees of IU as publicly reported by IU).

15.   Like Plaintiff, others presently insured under IU's plans have likely needed in the past, and will likely need in the future, to seek treatment in inpatient facilities that Defendant IU will likely deemed to be excluded from coverage.  The uninsured burden on such employees by reason of this arbitrary exclusion therefore represents, in the words of Congress as expressed by the Access to Therapies PPACA Provision, (a) an unreasonable barrier to the ability of insured IU employees to obtain appropriate medical care; (b) an impediment to insured IU employees to their timely access to health care services; and (c) a limit on the availability of health care treatment for the full duration of their medical needs. As a result, HHS is prohibited by PPACA from adopting any regulation that might be construed as endorsing the legality under the PHS Act (including the amendments to the PHS Act made by MHPAEA and PPACA) of Defendant IU's exclusion for residential treatment centers or facilities.  In any event, HHS has adopted no such regulation.

16.   The United States Court of Appeals for the Ninth Circuit, sitting in San Francisco, California (ruling on very similar facts but decided under California mental heath parity law, not federal law), earlier in 2012 rejected, California Blue Shield's attempted justification for the validity of the very same exclusion for treatment at "residential treatment centers or facilities" in part because of that Court's belief that California Blue Shield's arguments lacked support in "common sense."

17.    Without this Court's intervention, and especially in view of the significant mortality rate from Plaintiff's diagnosed mental health illness, Plaintiff's future health and safety (and the future health and safety of other persons covered by IU's group health plans that have, or may develop, mental health or behavioral health conditions) are materially compromised by Defendant IU's continued reliance upon the residential exclusion in the Plans and by Defendant Rives' continuing refusal to abandon such exclusion even in Plaintiff's case.

18.    Plaintiff therefore seek, for their own personal benefit (and the benefit of many other IU employees similarly situated to them who need or have needed or may need similar costly but specialized residential treatment for mental health and behavioral health disorders) that this Court declare, pursuant to Congressional intent as expressed by MHPAEA and PPACA as interpreted through "common sense," that Plaintiff (and such other similarly-situated IU employees) are entitled by federal (and Indiana) mental health parity law to coverage under the terms of IU's plans for medically-necessary stays (in the past and in the future) at facilities that specialize in treatment of persons suffering from mental illnesses or behavioral health disorders, as determined in accordance with all other terms and conditions of the plans but without regard to the purported exclusions for residential treatment centers or facilities.

*JURISDICTION, PARTIES, AND VENUE*

19.    This action is brought against Defendant Daniel Rives, in his official capacity with Defendant IU, pursuant to 42 U.S.C. § 1983 ("Section 1983") under the PHSA (as amended by the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA) and the Plaintiff Protection and Affordable Care Act (PPACA)), and more specifically under Section 2726(a)(3)A)(ii) of the PHSA (42 U.S.C. 300gg-26(a)(3)(A)(ii)).

Page 7

20.   This action seeks pursuant to Section 1983 to redress the deprivation by Defendant Rives, as an official of IU who is acting under color of Indiana law, of certain rights to parity in mental health insurance coverage that are secured to Plaintiff by the foregoing federal statute, as amended.

21.   Specifically, Plaintiff seeks a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (on behalf not only of Plaintiff but also on behalf of all beneficiaries of coverage under the Plans, not as a class action but pursuant to the Declaratory Judgment Act's authorization for a court in its discretion to award benefits to non-parties), declaring that the Defendant Daniel Rives is administering, under color of state law, certain group health insurance plans sold to employees by IU, an educational institution created by Indiana law, in violation of federal mental health parity laws included in Title XXVII of the PHSA as amended by MHPAEA and PPACA (together, "Federal Parity Laws") and Indiana's mental health parity laws applicable to group health insurance plans sold to employees of the State of Indiana (found at Indiana Code 5-10-8-9 ("State Parity Law" and, together with the Federal Parity Laws, the "Parity Laws") by categorically (without inquiry into the medical necessity for such services) denying insurance benefits to cover the expenses of services provided to insured individuals to treat their mental illnesses or behavioral health disorders solely because such services are provided by or billed by a certain type of facility.

22.   Plaintiff also seeks, solely on Plaintiff's behalf, (a) injunctive relief to prohibit Defendant Daniel Rives from continuing to permit defendant IU's third-party Plan administrator from administering Plaintiff's future benefits under the Plans in violation of the Parity Laws and to obtain other equitable relief, and (b) damages from Defendant IU for its agent's past denials of benefits for certain services in violation of the Parity Laws.

23.    Plaintiff is and at all times relevant was a citizen of the United States and of the State of Indiana, permanently resident within this judicial district.

24.    Plaintiff is and at all relevant times was an insured participant member in the Plans and pursuant to which Plaintiff at all relevant times was entitled to health care benefits.

25.    Defendant IU is a body corporate that may sue and be sued under the name "Trustees of Indiana University." IU was established and exists solely pursuant to a special charter created by Indiana statutes. IU does business under the name "Indiana University" in Indianapolis, Indiana, and in Bloomington, Indiana, which are both located within this judicial district. Based on IU's financial dependence on the state and its unique legal status, IU is an instrumentality of the state and the Board of Trustees is an agency and arm of the state.

26.    Defendant Daniel Rives is Associate Vice President of University Human Resources of Defendant IU and he is named as Defendant solely in his official capacity as such officer. The office of the Associate Vice President of University Human Resources is located within this judicial district on IU's campus in Bloomington, Indiana.

27.    Jurisdiction against Defendant Daniel Rives is predicated under 28 U.S.C. § 1331 because the requests for declaratory and injunctive relief against him in his official capacity involve federal questions under the Federal Parity Laws, and is also predicated on principles of pendent jurisdiction insofar as this action also involves questions arising under State Parity Law. Jurisdiction of the breach of contract claim against Defendant IU is predicated on supplemental jurisdiction under 28 USC § 1367.

28.    The past and potential future claims for health insurance benefits at issue herein were (and will be) administered by Defendant IU's agent, Anthem Blue Cross Blue Shield, in this

judicial district.

29.     Thus, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

# FIRST COUNT

# CAUSE OF ACTION UNDER SECTION 1983 FOR DEPRIVATION OF

# RIGHTS ESTABLISHED IN PLAINTIFF BY FEDERAL STATUTES UNDER

# COLOR OF STATE LAW

### *SECTION 1983 PREDICATES*

30.     The allegations of rhetorical paragraphs 1 through 29 inclusive are incorporated herein by reference.

31.     Since January 1, 2010, Defendant IU has offered group health insurance plans under which Plaintiff was continuously insured, including but not limited to the Indiana University PPO $900 Deductible Health Insurance Plan in effect for the plan year commencing January 1, 2010, and the Indiana University High Deductible Health Insurance Plan in effect for the plan year commencing January 1, 2012 (such two plans, and all similar plans since January 1, 2010, in effect from time to time in the past, or as may be offered to employees of Indiana University in the future, are hereafter referred to collectively as the "Plans").

32.     Each of the two Plans specifically named in this Complaint (and other such Plans of IU as they were in effect at all relevant times and will continue to be in effect during the next benefit year under the Plans commencing January 1, 2013) state that benefits are not provided ("unless... required to be covered by state law") for services provided by a "residential treatment center or

facility…" (this exclusion, in whatever form as it may appear from time to time in the Plans, is referred to herein as the "Residential Exclusion").

33.    IU, for purposes of Section 1983, is one and the same as the State of Indiana, and hence is not subject to suit under Section 1983 in its corporate capacity.

34.    IU's corporate powers are created, defined and limited by Indiana statute, including its power to create employee benefit plans and programs such as the Plans (Indiana Code 21-38-3-4(3)) and its obligation to contract for group health insurance benefits to be provided to IU's full-time employees only in accordance with the State Parity Law.

35.    IU has, upon information and belief, been a party since January 1, 2010, to one or more administrative services agreements with Anthem Insurance Companies, Inc., an Indiana corporation that does business within Indiana as "Anthem Blue Cross Blue Shield".  Anthem Blue Cross Blue Shield has from time to time designated certain of its corporate subsidiaries or other affiliates as its agent for purposes of managing "mental health" or "behavioral health" benefit determinations and claims under the Plans. Together, all such corporations and their affiliates are hereafter referred to as "Anthem."

36.    IU has at all times since January 1, 2010 delegated to Anthem IU's complete authority to administer the Plans, including claims administration, benefit management and utilization reviews, and coverage denials and related appeals. Because Anthem administers the Plans for the benefit of IU, it is a state actor and its actions are imputed to the state for purposes of Section 1983 and other laws.

37.    Defendant IU offers its programs of employee benefits to IU employees through its human resources department known as University Human Resources.

38.    Defendant Rives is the highest-ranking officer within University Human Resources and, in such capacity, oversees and directs IU's employee group health insurance plans and programs, including the Plans.

39.    Defendant Rives is the officer to whom IU has directed its employees to contact regarding specific interpretations of a policy relating to Human Resources, especially those that are confidential or personal in nature.

40.    Defendant Rives is the officer of IU to whom the parent of Plaintiff (acting as Plaintiff's representative and as the IU employee who had bought the insurance under the Plans for Plaintiff) personally and unsuccessfully sought relief from the application by IU's agent, Anthem, of the Residential Exclusion to services provided to Plaintiff.

41.    Defendant IU, through its officer, Defendant Rives, administers the Plans without compliance with the provisions of Title I of the Employee Retirement Income Security Act of 1974, as amended (ERISA) and the regulations of the Department of Labor thereunder that would apply to their administration of the Plans were they not "governmental plans" of an instrumentality of the State of Indiana as defined by ERISA § 3(32) that are exempted from Title I of ERISA.

42.    Among the ERISA burdens that IU and Rives as its officer avoid by relying upon the governmental plans exemption in administering the Plans are (a) exclusion from the ERISA requirements for delivery of detailed disclosures that ERISA plans are mandated to deliver to eligible participants under group health plans similar to the Plans, and (b) relief from exposure to private lawsuits that participants in non-governmental health insurance plans are expressly authorized to bring against plans and their fiduciaries for breach of duty or law (such as the

Federal Parity Law) under ERISA's express private civil remedies.

43.    IU is also protected by the Eleventh Amendment to the United States Constitution from being sued in federal court for monetary relief on account of past conduct without its consent and Anthem and Defendant Rives, when acting as IU's agents in connection with the administration of its self-insured Plans, is similarly protected by IU's Eleventh Amendment immunity from such claims to the extent that they seek monetary relief.

44.    Defendant IU has not in the past objected to being sued in this District Court and in this Division in other suits as to which opinions or other court entries are publicly available. Despite being requested by Plaintiff to advise whether IU would consent to being sued in this Court in relation to this dispute, Defendant IU has neither consented nor refused to consent to being named as Defendant in this action under the Eleventh Amendment.

45.    Due to its protections as a governmental entity under ERISA and the Eleventh Amendment, IU and its officers, including Defendant Rives, and other agents, including Anthem, enjoy substantial protections as a result of their operation of the Plans under color of state law and operate the Plans without making the same kind or quality of disclosures to participants like Plaintiff as would be required were the Plans not governmental plans, and Plaintiff's opportunities for federal judicial review of their compliance with Federal Parity Laws (and the quality or adequacy of the Plans' disclosures) are correspondingly limited.

46.    For all the above reasons, Defendant IU (though and including its officers, including Defendant Rives, and its agents, including Anthem) acts under color of the laws of the State of Indiana when designing and adopting the Plans, administering the Plans, communicating to participants and prospective participants the terms and conditions of the Plans, and

communicating the basis under the Plans for adverse benefit determinations and relevant medical criteria.

*The Violations of Federal Parity Laws under Color of State Law*

47.    At all times relevant, the Plans have provided benefits on a group basis to all eligible and participating IU employees for both medical and surgical benefits and mental health or substance use disorder benefits.

48.    At all times relevant, Plaintiff's parent was employed by Defendant IU and purchased health insurance from IU under the Plans at the applicable premium rates for "family coverage" (including Plaintiff).

49.    Plaintiff at all relevant times was covered as an intended beneficiary under the Plans in return for a greater contribution to the expenses of the Plans paid by Plaintiff's parent to Defendant IU than would have been the case had Patient's parent not elected to purchase "family" coverage.

50.    Plaintiff was at least 18 years old at all times relevant to this complaint (that is, since June 2010) but is and at all relevant times was less than 26 years old.

51.    At all times since prior to June 1, 2010, Plaintiff has continuously suffered, and continues at this time to suffer, from behaviors and associated medical symptoms caused by certain co-occurring mental health illnesses and disorders (collectively, "Disorders") for which benefits are or were provided under the Plans as now in effect or were then in effect.

52.    Plaintiff has, for most of the relevant time period on and after June 1, 2010, been unable to undertake the normal daily responsibilities of a full-time college student or employee by

reason of Plaintiff's Disorders.

53.    Plaintiff is, and has at all times relevant to this Complaint been, under continuing professional care for Plaintiff's Disorders, including inpatient care.  Such inpatient care has included:

(a) treatment provided by non-hospital facilities that provide 24 hour care and that specialize in treatment of such disorders for patients who are not responding to any type of outpatient therapy (sometimes generally referred to as residential treatment centers or facilities but often licensed under applicable state laws in varying classifications of facilities), and

(b) for limited time periods when symptoms were most acute and/or 24 hour nursing care was required, psychiatric inpatient hospitals.

54.    The term "residential treatment center or facility" has a commonly-understood secondary meaning within the health care professions and health insurance industry only with respect to the treatment of patient populations whose needs are principally related to mental health or behavioral health illnesses or disorders.

55.    At all relevant times Defendant IU (through its agent, Anthem, and its officers, including Defendant Rives) has construed the Plans as covering services or care provided by all or substantially all types of specialty non-hospital providers of inpatient services to patients whose needs were not principally related to mental health or behavioral health illnesses or disorders.

56.    Specifically, Defendant IU has at all relevant times paid benefits under specific insuring provisions of the Plans, without regard to any Residential Exclusion of the Plans, for inpatient treatment at those types of non-hospital facilities that are defined by the Plans as skilled nursing

facilities, hospices, and inpatient physical medicine and rehabilitation facilities when such inpatient treatment is provided to patients who needed specialized care for illnesses or conditions (other than those related principally to mental health or behavioral health illnesses or disorders).

    57. At all relevant times, Defendant IU (through its agent, Anthem, and its officers, including Defendant Rives) has (a) construed the Residential Exclusion of the Plans as excluding benefits for inpatient treatment services provided by or billed by all or substantially all types of specialty non-hospital providers of inpatient services to patients whose needs were principally related to mental health or behavioral health illnesses or disorders, and (b) construed the Plans' special insuring agreements for specialized non-hospital facilities described in paragraph 56, and other potentially applicable coverage provisions, as being inapplicable to such patients.

58.    Accordingly, the Plans in effect at all times relevant to this Complaint and as intended by IU to continue throughout 2013 disparately treat services for behavioral health conditions from medical and surgical services by imposing a material treatment limitation (the Residential Exclusion) that, in its practical and intended effect, applies only to treatment of patients who need specialized inpatient facility care principally for mental illness or behavioral health disorders.

*Violation of the Prohibition on More Restrictive Treatment Limitations*

59.    The Federal Parity Laws forbid Defendant Rives from adopting and implementing on behalf of Defendant IU a group health plan such as the Plans that imposes treatment limitations applicable to mental health benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the Plans.

60.    For purposes of the Federal Parity Laws, " 'treatment limitation' includes limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment."

61.    The limitation on scope and duration of inpatient treatment for mental health in inpatient facilities other than hospitals that is represented by the Residential Exclusion is a treatment limitation under Federal Parity Laws that (in its practical and intended effect) is applied more restrictively than the predominant treatment limitations applicable to substantially all medical and surgical benefits for inpatient treatment at facilities other than hospitals, by reason of the fact (among others) that the Plans permit inpatient treatment (subject to certain Plan limitations) under special insuring clauses for medically necessary treatments provided by SNFs, inpatient rehab facilities, and hospices to patients other than those seeking mental health benefits.

62.    The treatment limitation on mental health services represented by the Residential Exclusion of the Plans is therefore a violation of the Federal Parity Laws.

*Violation of the Prohibition on Exclusive Treatment Limitations*

63.    The Federal Parity Laws forbid Defendant Rives from adopting and implementing on behalf of Defendant IU a group health plan such as the Plans that imposes a treatment limitation on coverage for mental health services that is not imposed on coverage for services for other medical or surgical services.

64.    The treatment limitation represented by the Residential Exclusion of the Plans is intended to apply, and is in fact applied, by Defendant IU's administrator under the direction of Defendant Rives only with respect to mental health benefits and such Residential Exclusion is therefore a violation of the Federal Parity Laws.

Page 17

## COUNT TWO

## BREACH OF STATE PARITY LAW

65.     The allegations set forth in rhetorical paragraphs 1 through 64 inclusive are incorporated herein by reference.

66.     The State Parity Law prohibits the State of Indiana, when contracting for group health insurance benefits for full-time state employees, from imposing treatment limitations or financial requirements on the coverage of services for mental illness if similar limitations or requirements are not imposed on the coverage of services for other medical or surgical conditions.

67.     Defendant IU is one and the same as the State of Indiana for purposes of the State Parity Law.

68.     The treatment limitations on mental health services represented by the Residential Exclusion of the Plans is included in the contract that IU has entered into with the parent of Plaintiff for the express and intended benefit of Plaintiff's coverage under the Plans.

69.     Plaintiff's parent, as a full-time employee of Defendant IU, is a state employee for purposes of the State Parity Law who has enrolled Plaintiff for coverage of medical and surgical conditions, including coverage for services for mental illnesses, in accordance with the Plans, in return for the prescribed Plan employee contributions, at all relevant times.

70.     Plaintiff's Disorders are mental illnesses and are within the coverage of the Plans for benefits with respect to mental illness as defined by the Plans

71.     The Residential Exclusion of the Plans is intended to apply, and is in fact applied, by Defendant IU's administrator under the direction of Defendant Rives, only with respect to coverage of services for mental illness.

72.     By providing no days of benefits for medically necessary inpatient treatment by facilities (other than those deemed hospitals by defendant IU's administrator) for mental illness, solely in reliance upon the Residential Exclusion of the Plans, while providing multiple days of benefits for inpatient treatment by all or substantially all types of facilities (whether or not classified as a hospital) for medically necessary services for other medical or surgical services, the Plans impose both a financial requirement and a treatment limitation on inpatient services for mental health that is not similar to the financial requirements and treatment limitations imposed on the plans for inpatient services for other medical or surgical benefits.

73.     Such Residential Exclusion is therefore a violation of the State Parity Law.

## COUNT THREE

## BREACH OF CONTRACT

74.     The allegations set forth in rhetorical paragraphs 1 through 73 inclusive are incorporated herein by reference.

75.     As a consequence of the pre-admission-determinations by Anthem that (regardless of the medical necessity for such treatment or the appropriateness of that level of care) the Plans as in effect at the time of admission would not cover Plaintiff's treatment at four different facilities classified by Anthem as "residential treatment centers or facilities" within the meaning of the Residential Exclusion, Plaintiff has been personally financial responsible for the payment of Plaintiff's uninsured treatment expenses incurred at such facilities during the plan years 2010 and 2012.

76.     Pursuant to the terms of the applicable Plan as they existed during 2010 and 2012, Plaintiff (directly or through the applicable facility's admissions staff) has submitted oral or

written requests for pre-admission determinations of Plan coverage and/or grievances and internal appeals of claims denials under the Plans, all in accordance with Anthem internal guidelines for such matters, seeking reimbursement of the expenses that were incurred in connection with Plaintiff's stays at such facilities.

77.   Anthem, despite being invited to do so by Plaintiff, at no time has made any claim (in connection with the denials communicated to the facilities upon their requests for pre-determination of Plan coverage or to Plaintiff upon determination of the grievance or appeals) that Anthem's denials of coverage for benefits at such facilities were based in any way upon any concern that such care at such facilities was not medically appropriate or necessary for the treatment of Plaintiff's Disorders.

78.   Instead, in each such case, Anthem, as agent for Defendant IU, expressly determined that the denials of coverage were valid under the applicable Plan (and implicitly or explicitly to be lawful under Parity Laws), based solely upon the Residential Exclusion.

79.   Each of the Plans includes a "savings clause" that in effect provides that any provision of the Plan that violates federal or state law is modified to the extent required so that the Plan would be lawful.

80.   Further, the Residential Exclusion of the Plans by its terms is not applicable when the centers or facilities otherwise covered by the Residential Exclusion are "required to be covered by state law." For purposes of IU's Plans as applied to Plaintiff, the applicable state law is that of Indiana.

81.   Because the Residential Exclusion violates both the Federal Parity Laws and the State Parity Law, as they have been in effect at all relevant times, the Residential Exclusion is by its

terms inapplicable by reason of Indiana law and in any event forms no part of any of the Plans by reason of the savings clause.

82.    Because the Plans as in effect at all relevant times, properly construed to give effect to the terms of the Residential Exclusion and the savings clause, did not include the Residential Exclusion, and because the Residential Exclusion was the sole basis for IU's agent, Anthem, to deny coverage for the treatment provided to Plaintiff at the four facilities, Defendant IU breached the insurance contract represented by Plaintiffs' enrollment for coverage under the Plans in all four cases by relying upon an invalid exclusion from coverage.

83.    Plaintiff has been damaged by Defendant IU's breach of contract in connection with the denial of benefits for Plaintiff's treatment at each of these four facilities.

84.    Plaintiff has requested that Defendant IU pay for all amounts billed to Plaintiff by these four facilities for Plaintiff's treatment at such facilities that has not previously been reimbursed to Plaintiff based on Anthem's reliance upon the Residential Exclusion, but Defendant IU has refused to do so.

## CASE AND CONTROVERSY; ELIGIBILITY FOR DECLARATORY AND EQUITABLE RELIEF

85.    The allegations set forth in rhetorical paragraphs 1 through 84 inclusive are incorporated herein by reference.

86.    Plaintiff remains under regular outpatient treatment for Plaintiff's Disorders, including prescription medicine managed by Plaintiff's psychiatrist and periodic laboratory blood tests to determine whether Plaintiff's Disorders have presented medical complications requiring intervention at emergency rooms or other medical care.

87.    Plaintiff remains in need of access to the full continuum of care provided by behavioral health providers of all types for Disorders of the type being experienced by Plaintiff.

88.    Plaintiff experienced both physical health and mental health crises caused by relapses in Plaintiff's Disorders in the winter or spring of each of the years 2010, 2011 and 2012, necessitating emergency admissions into acute care general hospitals, acute care psychiatric hospitals, and intermediate or sub-acute care inpatient facilities (some of which IU's agent has determined to be "residential treatment centers").

89.    Plaintiff's Disorders present a real and substantial risk that Plaintiff could at any time again experience a triggering event or thought that could cause a sudden and severe worsening of Plaintiff's behaviors and an associated rapid decline in Plaintiff's physical health as well as Plaintiff's mental health.

90.    In the event of any such future crisis, Plaintiff is entitled by the Parity Laws to consider (free of any cost considerations other than those that would be considered were Plaintiff considering inpatient treatment for an illness or condition that is not primarily behavioral in nature) any recommendation that Plaintiff's physicians may determine is then medically necessary, including admission into a residential treatment facility (or acute care hospital, or both, in the natural flow of the continuum of care for treatment of such Disorders and associated medical complications).

91.    Defendant Rives, on behalf of Defendant IU, has, in the past, by reason of his refusal to countermand the denial of benefits by Defendant IU's administrator solely on the basis of the Residential Exclusion, deprived, and he continues to threaten to deprive, Plaintiff of rights assured to Plaintiff by the Parity Laws and by their contracts for health insurance represented by

Plaintiff's enrollment in the Plans.

92.    The threatened future deprivation of Plaintiff's statutory and contract rights irreparably injures Plaintiff by denying Plaintiff the freedom to plan for future care and rehabilitation of Plaintiff's mental illnesses and harmful behaviors without unfair concern for the uninsured costs of such care.

93.    Defendant IU, under the direction of Defendant Rives, distributed a packet of materials to IU employees (including Plaintiff's parent) in October 2012, including a booklet headed "Open Enrollment 2013," seeking enrollment instructions from eligible IU employees like Plaintiff's parent in relation to Plan participation for the new Plan benefit year commencing January 1, 2013.

94.    In a table headed "2013 Medical Plans Distinguishing Features" that is included in the 2013 Open Enrollment booklet, Defendant IU (under the direction of Defendant Rives) provides "Exclusion Examples" in bullet point format.

95.    One of the "Exclusion Examples" bullet points states simply: "Custodial care, convalescent, 'long-term' nursing, or residential care." This is a new disclosure; Defendant IU had not previously disclosed "residential care" as an example of an exclusion in the annual enrollment materials covering any prior Plan benefit year during the period that is relevant to this Complaint.

96.    Upon information and belief, the reference in the Exclusion Example in the 2013 Open Enrollment booklet to "residential care" is an oblique reference to the Residential Exclusion, and consequently is materially misleading to IU employees and their beneficiaries because (a) "residential care" does not in ordinary parlance connote "care provided or billed by residential

Page 23

treatment centers or facilities" as provided by the Residential Exclusion and the full 2013 Plan booklet is not available during the current open enrollment period to show the contradiction, and (b) the use of the term "residential care" in a sequence of terms referring to dissimilar care environments misleadingly conflates the type of acute or sub-acute limited-period specialized residential care of the type provided by the facilities as to which Defendant IU has in the past denied Plaintiff benefits with the types of interim-to-low level non-specialized long-term care provided for mere custody, or convalescence, or long-term care by other health care facilities.

97. Regardless of whether the Residential Exclusion violates Parity Laws, Plaintiff (and Plaintiff's parent and other employees of IU and their family members who rely upon such disclosures) is entitled in all fairness and equity to non-misleading disclosure of any material limitation upon benefits provided by the Plans.

## REQUESTS FOR RELIEF

98. Plaintiff is entitled to and hereby requests that this Court grant Plaintiff the following relief:

  (a) against Defendant Rives, in his official capacity with Defendant IU, a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declaring unlawful under the Federal Parity Laws and under the State Parity Law the continuing application by Defendant IU (through the actions of its officers including Defendant Rives, and its agents, including Anthem) of the Residential Exclusion to deny Plaintiff (and other present and future IU employees and their eligible family members similarly situated) coverage for medically necessary treatment of mental illness or behavioral health conditions that would otherwise be covered by the Plans;

(b) An order pursuant to the Declaratory Judgment Act enjoining Defendant Rives to direct IU's third-party administrative agent(s) under the Plans to cease and desist from applying the Residential Exclusion under any of the Plans to claims submitted by Plaintiff;

(c) Regardless of whether or not a declaration and injunction is issued as requested by Plaintiff, an order pursuant to the Declaratory Judgment Act requiring that Defendant Rives, on behalf of Defendant IU, distribute to all persons who have received the 2013 Open Enrollment booklet a notice prominently and fairly correcting the misleading disclosure of the claimed exclusion for residential care;

(d) An award of monetary damages payable by Defendant IU to compensate Plaintiff for Defendant IU's breaches of contract by refusing (solely in reliance upon the illegal Residential Exclusion) to pay or reimburse Plaintiff for all previously-unreimbursed charges for care provided by or billed to Plaintiff by the four residential centers as to which inpatient coverage was wrongfully denied by Defendant IU's agent, Anthem, during 2010 and 2012, in an amount to be determined at trial;

(e) Against Defendant IU and Defendant Rives, in his official capacity with Defendant IU, for attorneys' fees and expert witness fees and costs reasonably incurred by Plaintiff to obtain the relief requested in a sum to be determined pursuant to 42 U.S.C. 1888;

(f) For costs of suit incurred herein; and

(g) For such other and further relief as the Court deems just and proper to protect Plaintiff's present and future rights (and the rights of those similarly situated) under

Parity Laws from being deprived by or on behalf of Defendant IU under color of state law.

DATED: October 30, 2012

MARK BARNES LAW PC

_Mark B. Barnes_
Mark B. Barnes

GOODIN ABERNATHY, LLP

_Karl G. Popowics_
Karl G. Popowics

Attorneys for Plaintiffs