# UNITED STATES DISTRICT COURT
## for the SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **J. DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| *vs.* ) | **CAUSE NO.  1:12-cv-1593-JMS-DKL** |
| ) | |
| **TRUSTEES OF INDIANA** ) | |
| **UNIVERSITY,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

### ORDER

**Plaintiff's** *Motion for Leave to File Civil Action under Fictitious Name* **[doc. 28] and** *Motion to Maintain Seal of Unredacted Affidavit* **[doc. 35]**

Plaintiff has proceeded by pseudonym since the initiation of this Cause on October 30, 2012.  On April 28, 2013, Plaintiff filed the present motion to proceed under a fictitious name, "J. Doe."  *Motion for Leave To File Civil Action under Fictitious Name* [doc. 28].  In support of the motion, Plaintiff submitted an affidavit by Shiela Irick, M. D., a psychiatrist under whose care Plaintiff has been since June 2010.  Plaintiff's name and mental disorders, and all gender pronouns were redacted from this affidavit.[1]  *Affidavit of Sheila Irick, M. D.* [doc. 28-1] ("*Irick Affidavit*").  Plaintiff's second present motion requests maintenance of the seal on these redactions.  *Motion To Maintain Seal of Unredacted Affidavit from Dr. Irick Provisionally Filed under Seal* [doc. 35].  The Court construes these motions to request leave to maintain the seal on Plaintiff's name, gender, and mental disorders.

---

[1] Plaintiff complied with the Court's interim order to file a sealed unredacted version of the affidavit.  [Docs. 33 and 34.]

Not redacted from Dr. Irick's affidavit were her averments that Plaintiff has "struggled with recurring episodes of [redacted disorders] and other co-occurring mental health conditions, and from time to time has had suicidal ideation and self-harm occurrences caused by behaviors triggered by such episodes." *Irick Affidavit* ¶ 4. Dr. Irick also states that Plaintiff "is not recovered" from the disorders and that, in her professional opinion, "the public identification (and potential for news media publicity associated with the identification)" of Plaintiff by name "in a public record (such as the court proceedings associated with maintenance by [pronoun] of a lawsuit seeking insurance benefits for [possessive pronoun] treatment for [possessive pronoun] mental health conditions) would be detrimental to [Plaintiff's] mental health and personal safety." *Id.* ¶¶ 5 and 6. Dr. Irick concludes that "the identification of [Plaintiff] by [possessive pronoun] true name in the publicly-available records associated with such a court proceeding would, in my professional opinion, pose a real and substantial risk of causing mental and physical harm to [Plaintiff]." *Id.* ¶ 7.

Plaintiff's *Amended Complaint* [doc. 12] contains the following allegations. Plaintiff is the adult child of an employee of Indiana University and has been covered under the parent's group health-insurance plans ("Plans") since January 1, 2010.[2] Over the twenty-

---

[2] Plaintiff identifies two specific plans under which Plaintiff was covered: the Indiana University PPO $900 Deductible Health Insurance Plan, effective for the plan year commencing January 1, 2010, and the Indiana University High Deductible Health Insurance Plan, effective for the plan year commencing January 1, 2012. *Amended Complaint* ¶ 34. Plaintiff alleges that all of Indiana University's plans in effect during the relevant period included the residential exclusion about which Plaintiff complains *infra*.

nine months preceding the filing of this suit,[3] the Plans' third-party administrator ("Plan Administrator") denied over $100,000 of insurance claims for services that Plaintiff received at various inpatient facilities in five states, including mental-health hospitals and non-hospital specialized inpatient facilities. Over $50,000 of these claims were for inpatient services that Plaintiff received at four licensed health-care facilities in three states. The Plan Administrator's denials were not based on the substance of the medical care Plaintiff received; rather, the Plan Administrator

> categorically advised the admission staff of each of such facilities (in advance of Plaintiff's admission to such facilities, on a "pre-determination" basis) that Plaintiff was not eligible for coverage for any charges that might be incurred for services provided by (or even billed by) such facility during the course of Plaintiff's inpatient treatment at their facility, based solely on an exclusion in the IU plans (in force at the date of filing this Amended Complaint and for all relevant time periods) that purports to bar coverage for benefits for "[c]are provided or billed by residential treatment centers or facilities . . . ."

*Amended Complaint* ¶ 13.

Language in the Plans provided that, unless required by state law, benefits will not be paid for services provided by a "residential treatment center or facility" (the "residential exclusion"). *Id.* ¶ 35.[4] The term "residential treatment center or facility" has a secondary meaning within the health-care industry: it means non-hospital facilities that provide 24-hour residential specialized care and treatment for patient populations whose needs are

---

[3] This Cause was filed on October 30, 2012 [doc. 1]. Thus, Plaintiff complains about claims that the Plan Administrator denied beginning in June 2010.

[4] The relevant plans have not been submitted.

principally related to mental-health or behavioral-health illnesses or disorders.  *Id.* ¶¶ 56, 57.  Defendants have construed the residential exclusion to exclude coverage for such services.  *Id.* ¶ 60.  Defendants have paid benefits for inpatient treatments at non-hospital, specialized, residential facilities that provided treatment for non-mental disorders and illnesses, regardless of the residential exclusion.  *Id.* ¶ 59.

Plaintiff claims that the Plans' denials of Plaintiff's claims based on the residential exclusion violate federal and state mental-health parity laws (requiring health-care plans to treat mental and physical claims equally), violate anti-discrimination laws, and breach the plan contracts.[5]  Plaintiff also claims that the Plans failed to provide required timely disclosures regarding the residential exclusion.  Plaintiff seeks (1) a declaratory judgment that the Plans' denial of Plaintiff's claims and its continued application of the residential exclusion to deny other participants' claims based on its interpretation of the residential exclusion violates federal and state law, (2) a declaratory judgment that the Plans violated federal law by not making required disclosures, (3) an injunction directing Defendants to cease applying the residential exclusion to deny mental-health parity,[6] (4) an injunction directing the Plans to make required disclosures and allow participants to change their

---

[5] Plaintiff claims that the governing plan documents did not define "residential treatment centers or facilities" to exclude mental-heath services and that Indiana law required mental-health parity at the time.

[6] In their *Amended Answer*, filed on June 11, 2013 [doc. 36], Defendants allege that, as of January 1, 2013, none of their plans includes an exclusion for residential treatment, see, *e.g.*, *id.* ¶ 4, and that they have paid all of Plaintiff's claims that Plaintiff identified as at issue in this cause, including all claims that were denied pursuant to the former residential exclusion, see, *e.g.*, *id.* ¶ 12.

previous enrollment decisions, and (5) monetary damages "to compensate Plaintiff for all elements of damages to Plaintiff caused by Defendant IU's violations of [parity laws] and by Defendant IU's breaches of contract . . . ."[7]  *Amended Complaint* ¶ 148.

> It is very well established that anonymous litigation is "disfavor[ed]," and should be permitted only under exceptional circumstances.  "The public has an interest in knowing what the judicial system is doing, an interest frustrated when any part of litigation is conducted in secret."  Under our precedent, however, "[t]he presumption that parties' identities are public information, and the possible prejudice to the opposing party from concealment, can be rebutted by showing that the harm to the [party requesting anonymity] . . . exceeds the likely harm from concealment."

*Doe ex rel. Doe v. Elmbrook School District*, 658 F.3d 710, 721 (7th Cir. 2011) (citations omitted), *adopted en banc*, 687 F.3d 840, 842-43 (7th Cir. 2012), *petition for cert.* (*on other grounds*) *filed*, 2012 U.S. Briefs 755, 2012 U.S. S. Ct. Briefs LEXIS 5376 (Dec. 20, 2012).

> The use of fictitious names is disfavored and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts.  Rule 10(a) of the Federal Rules of Civil Procedure, in providing that the complaint shall give the names of all the parties to the suit . . . instantiates the principle that judicial proceedings, civil as well as criminal, are to be conducted in public.  Identifying the parties to the proceeding is an important dimension

---

[7] Plaintiff alleges that, by denying benefits for Plaintiff's treatments at four inpatient facilities and five hospital facilities, in violation of state and federal parity and anti-discrimination laws and the Plans' terms, Defendants knowingly and intentionally interfered with the effectiveness of recommended treatment and, therefore, Plaintiff's recovery and pursuit of educational and career goals.  In addition, Plaintiff was forced to seek inpatient hospital admissions to address mental and physical crises that might have been avoided or mitigated had Defendants not pressured Plaintiff's less-restrictive residential non-hospital treatment facilities to treat Plaintiff on an uninsured basis, resulting in premature discharges from those facilities and a greater propensity for relapses and crises.  These acts and omissions by Defendants allegedly caused Plaintiff mental and emotional damage, pain and suffering, distress and anguish, and caused Plaintiff to undergo invasive acute-care therapies that might have resulted in memory loss and other damage to Plaintiff's long-term physical and mental health.  Plaintiff seeks money damages from Defendants for unpaid claims and past and future injuries.  See, *e.g.*, *Amended Complaint* ¶¶ 80-83.

of publicness.  The people have a right to know who is using their courts.

> There are exceptions.  Records or parts of records are sometimes sealed for good reasons, including the protection of state secrets, trade secrets, and informers; and fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses.  But the fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name, even though many people are understandably secretive about their medical problems.

*Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) (citations omitted).

Rather than apply a mechanical test to plaintiffs' motions to proceed anonymously, courts weigh and balance the movants' interests in privacy against defendants' interests in mounting effective defenses and the public's interest in transparency, on a scale that is pre-weighted by the strong "customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Indiana Black Expo, Inc.*, 923 F.Supp. 137, 139 (S.D. Ind. 1996).  Courts have identified several factors that are relevant to this evaluation:

> (1) whether the plaintiff is challenging governmental activity; (2) whether the plaintiff would be required to disclose information of the utmost intimacy; (3) whether the plaintiff would be compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution; (4) whether the plaintiff would risk suffering injury if identified; and (5) whether the party defending against a suit brought under a pseudonym would be prejudiced.

*Id.* at 140 (quoting *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D. N.Y. 1996).  *Indiana Black Expo* added two factors to this list:  whether the interests of children are at stake and whether there are less drastic means of protecting legitimate interests.  *Id.*

6

Considering *Indiana Black Expo*'s factors, Plaintiff does not challenge governmental activity (first factor), is not risking criminal prosecution (third factor), and is not a child (sixth factor).  Identifying Plaintiff by name would tie Plaintiff to the mental disorders and treatment history described in Dr. Irick's affidavit and, thus, disclose what are normally private and sensitive matters (second factor).  However, the Court agrees with the Seventh Circuit's statement in *Blue Cross & Blue Shield United of Wisconsin* (quoted above) that "the fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name, even though many people are understandably secretive about their medical problems."  Confronted, in that case, with a plaintiff who had suffered from the psychiatric disorder of obsessive-compulsive syndrome, the court of appeals wrote that the disorder was "not such a badge of infamy or humiliation in the modern world that its presence should be an automatic ground for concealing the identity of a party to a federal suit.  To make it such would be propagate the view that mental illness is shameful."  *Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d at 872.  If Plaintiff were concerned solely about possible embarrassment or humiliation from the disclosure of Plaintiffs' mental disorders, then this Court would, as have courts generally, not permit anonymity.  *See Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005); *Indiana Black Expo*, 923 F.Supp. at 142.  However, more than Plaintiff's humiliation and embarrassment is at stake:  there is a risk of injury if Plaintiff were identified (fourth factor).  Dr. Irick's professional opinion, as Plaintiff's treating psychiatrist, is that public identification of Plaintiff would present a "substantial risk of causing mental and physical harm" to Plaintiff, who has not recovered from the

7

mental disorders and has a history of suicidal ideation and self-harm occurrences. *Irick Affidavit* ¶¶ 4, 6, and 7. Such concerns about threats to plaintiffs' health and safety argue in favor of anonymity in this case. *See Elmbrook School District*, 658 F.3d at 723-24; *Indiana Black Expo*, 923 F.Supp. at 142.

Defendants argue that they will be prejudiced by Plaintiff's public[8] anonymity (fifth factor) because Plaintiff must prove both that Plaintiff is an individual with a disability and that Defendants intentionally discriminated against Plaintiff when they denied Plaintiff's claims. The former will require Defendants to inquire into Plaintiff's medical records and, because the latter impugns the personal integrity or reputations of Defendants, it falls under *Indiana Black Expo*'s ruling that "[b]asic fairness requires that where a plaintiff makes such accusations publicly, he should stand behind those accusations, and the defendants should be able to defend themselves publicly." *Indiana Black Expo*, 923 F.Supp. at 142. However, Defendants do not explain *how* Plaintiff's anonymity will hinder their defense. *Indiana Black Expo* focused on the fact that the plaintiff's and defendants' credibilities would be directly in issue, but that case involved an employment-discrimination claim in which the plaintiff accused the defendants of "serious and deliberate wrongdoing," attacking their integrity and reputations. Here, there are no allegations of personal animus or personal discriminatory motives on the part of defendants, only that they applied and/or

---

[8] Defendants are well aware of Plaintiff's identity. Not only have they administered Plaintiff's claims but they participated in an in-person settlement conference in this Cause conducted by this magistrate judge.

enforced a discriminatory and illegal interpretation of a term in the Plans' policies. Similarly, there is no allegation or suggestion by Defendants in their *Amended Answer* that Plaintiff's claims lacked medical substance or were fraudulent. If Defendants intend to prove that Plaintiff's claims were deniable and/or actually denied on grounds other than the residential exclusion, then they failed to explain how Plaintiff's anonymity hinders such a defense. Defendants did not show how Plaintiffs' credibility is a key factor in this case.

Defendants do argue that, in order to prove a claim that Defendants discriminated against Plaintiff due to Plaintiff's mental illnesses, Plaintiff must prove that Plaintiff is an "individual with a disability," which will require an inquiry into Plaintiff's medical records. But, again, Defendants fail to explain how such an inquiry into Plaintiff's medical records is hindered by maintaining Plaintiff's anonymity or how Plaintiff's credibility will be essential to the showing that Plaintiff is an individual with a disability. The Court finds that Defendants have not shown that they will suffer substantial prejudice if Plaintiff's anonymity is maintained.

The Court concludes that the risk to Plaintiff's health and safety, if Plaintiff is identified by name, outweighs the public's interest in judicial openness and overcomes the presumption against pseudonymous litigation. However, the Court finds that Plaintiff has not shown a need to seal Plaintiff's gender. In addition, no need has been shown to seal the nature of Plaintiff's mental illnesses if Plaintiff's identity is sealed. The Court notes that, in order to protect Plaintiff's anonymity, the identification of Plaintiff's parent,

through whom Plaintiff has coverage under the Plans, shall be sealed as well.

Therefore, Plaintiff is allowed to proceed by pseudonym in this case, at this time. Plaintiff's name, the name of Plaintiff's parent who is a Plans participant, and any information tending to identify either person shall be redacted from documents filed in court and Defendants are ordered not to disclose the same.  Plaintiff's gender and Plaintiff's mental and physical illnesses (to the extent that they are relevant to the claims and defenses in this case) shall not be sealed.  The Court cautions that the balancing of interests can shift against Plaintiff depending on future developments in this case.  The Court notes that, if Plaintiff's prayer for damages for, *inter alia*, mental and emotional damage, distress, anguish, pain, and suffering is pursued, necessitates Plaintiff's testimony, and implicates Plaintiff's credibility, then the Court might be required to revisit this ruling.

## Conclusion

Plaintiff's *Motion for Leave To File Civil Action under Fictitious Name* [doc. 28] and *Motion To Maintain Seal of Unredacted Affidavit from Dr. Irick Provisionally Filed under Seal* [doc. 35] are **GRANTED in part and DENIED in part** as set forth herein.

**This Order is STAYED** for a period of twenty days from its service on the parties, in order to allow time for the parties to file objections with the district judge.  If objections are filed, then this Order shall be further stayed until the district judge issues rulings thereon.  Any further stay, in order to allow time to pursue, and pending resolution of, an

appeal, must be sought from the district judge.

**Within five days of the lifting of the stay**, Plaintiff shall file a revised version of the

*Irick Affidavit* [doc. 28-1] from which only Plaintiff's name may be redacted.

**SO ORDERED this date:** 07/03/2013

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.

11